IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAVIER RODRIGUEZ, CHRIS ORTIZ, and TROY-WALKER ENTERPRISES, LLC, d/b/a STERLING JET AVIATION, on behalf of themselves and all other persons similarly situated, | § | |
| Plaintiffs, | § | CIVIL ACTION NO. 4:17-cv-01974 |
| v. | § | JURY TRIAL DEMANDED |
| RENATO VENTURINI, MARCELA WHITE, and TAVAERO JET CHARTER CORPORATION, | § | |
| Defendants. | § | |

**DEFENDANTS' ANSWER TO PLAINTIFFS' ORIGINAL COMPLAINT AND COUNTERCLAIMS**

Defendants Renato Venturini ("Venturini"), Marcela White ("White"), and Tavaero Jet Charter Corporation ("Tavaero") (collectively referred to as "Defendants") file this their Answer to Plaintiffs' Original Complaint ("Complaint") filed by Javier Rodriguez ("Rodriguez"), Chris Ortiz ("Ortiz"), and Troy-Walker Enterprises, LLC d/b/a Sterling Jet Aviation ("Sterling"), on behalf of themselves and all other persons similarly situated, (collectively referred to as "Plaintiffs") as follows:

**DEFENDANTS' ORIGINAL ANSWER**

Pursuant to Federal Rule of Civil Procedure 8(b), Defendants respond to the allegations in each corresponding paragraph of the Complaint as follows:

## INTRODUCTION AND FACTUAL BACKGROUND

1. Defendants admit that (1) the Plaintiffs provide pilot services; (2) Rodriguez and Ortiz flew two aircraft – a Hawker 800XP (the "Hawker") and a Bombardier Challenger 605 (the "Challenger"); (3) both the Hawker and the Challenger are owned and registered by Volpe Aviation, LLC ("Volpe"); (4) Volpe has not been sued by the Plaintiffs in this case; (5) Tavaero has an FAR Part 135 Air Carrier Operating Certificate ("135 Certificate"); (6) Tavaero added the Hawker and the Challenger to the 135 Certificate; and (7) for a period of time, the Hawker and the Challenger were part of the 135 Certificate. On information and belief, Defendants admit that (1) Rodriguez and Ortiz provided pilot services to Volpe through Sterling and (2) Volpe, through a Dry Lease Agreement with Tavaero, provided the Hawker and the Challenger to Tavaero, as well as the pilot services of Rodriguez, Ortiz, and one other pilot. Defendants are without sufficient information to admit, and therefore deny, that Plaintiffs provided pilot services to Volpe directly as it related to non-charter flights on the Hawker and the Challenger. Defendants deny the remaining allegations contained in Paragraph 1 of the Complaint.

2. Defendants admits that Volpe entered into a Dry Lease with Tavaero (a lease that provided both aircraft and flight crew) and that Rodriguez, Ortiz, and one other pilot flew the aircraft provided by Volpe under the Dry Lease to Tavaero. Defendants are without sufficient information to admit, and therefore deny, that (1) Volpe entered into a Pilot Services contract with Sterling for the Hawker and the Challenger and (2) Rodriguez and Ortiz flew the two aircraft on numerous flights governed only by the direct contracts between Sterling and Volpe. Defendants deny the remaining allegations contained in Paragraph 2 of the Complaint.

3. Defendants admit that (1) they knew the Plaintiffs, (2) the Plaintiffs provided services to Tavaero as independent contractors pursuant to Volpe's agreement with Tavaero, (3)

for a period of time, Tavaero directly engaged Rodriguez as an employee or through his company, Lion Aviation, LLC ("Lion") and (4) for a period of time, Tavaero directly engaged Ortiz as an employee or through Sterling. Defendants deny the remaining allegations contained in Paragraph 3 of the Complaint.

4. Defendants admit that for a period of time (1) Ortiz performed the duties of the Director of Operations for Tavaero, (2) Ortiz was compensated both as an employee of Tavaero and through Sterling in this position, and (3) Ortiz helped prepare Tavaero's training and general operating manuals and assisted in obtaining FAA approval for the manuals and was paid a flat fee for the writing of the manuals. Defendants deny the remaining allegations contained in Paragraph 4 of the Complaint.

5. Defendants admit that (1) for a period of time, Rodriguez was an employee of Tavaero, (2) on January 20, 2016, Rodriguez submitted a letter of resignation to Tavaero, (3) according to the letter of resignation, Rodriguez received an offer of employment from Ortiz and Sterling, (4) after his resignation, Rodriguez provided the services of an Assistant Chief Pilot to Tavaero, either as an employee of Tavaero or as an independent contractor through Lion, and (5) some of the duties of the Assistant Chief Pilot were to complete Federal Aviation Administration ("FAA") form A301 audits for training facilities and to provide training to pilots. Defendants deny the remaining allegations contained in Paragraph 5 of the Complaint.

6. Defendants admits that, in late May 2017, Tavaero – through White – terminated the contractual relationships with Lion and Sterling and removed the Hawker and the Challenger from Tavaero's Part 135 certificate. Defendants deny the remaining allegations contained in Paragraph 6 of the Complaint.

7. Defendants deny the allegations contained in Paragraph 7 of the Complaint.

## NATURE OF ACTION

8. Defendants admit that Plaintiffs purport to assert claims under the Fair Labor Standards Act ("FLSA") and for breach of contract and quantum meruit. Defendants deny the remaining allegations contained in Paragraph 8 of the Complaint.

9. Defendants deny the allegations contained in Paragraph 9 of the Complaint.

10. Defendants deny the allegations contained in Paragraph 10 of the Complaint.

11. Defendants deny the allegations contained in Paragraph 11 of the Complaint.

12. Defendants deny the allegations contained in Paragraph 12 of the Complaint.

## PARTIES

13. On information and belief, Defendants admit the allegations contained in Paragraph 13 of the Complaint.

14. On information and belief, Defendants admit the allegations contained in Paragraph 14 of the Complaint.

15. On information and belief, Defendants admit the allegations contained in Paragraph 15 of the Complaint.

16. Defendants deny the allegations contained in Paragraph 16 of the Complaint.

17. Defendants deny the allegations contained in Paragraph 17 of the Complaint.

18. Defendants admit the allegations contained in Paragraph 18 of the Complaint.

## JURISDICTION AND VENUE

19. Defendants admit that the Court has jurisdiction over the subject matter as alleged in Paragraph 19 of the Complaint.

20. Defendants admit that venue is appropriate in this Division, but deny the remaining allegations contained in Paragraph 20 of the Complaint.

**FLSA COVERAGE**

21. Defendants admit that Tavaero is an enterprise under Sections 3(r) and 3(s) of the FLSA and that it has had a gross annual business volume in excess of $500,000.00. Defendants deny the remaining allegations contained in Paragraph 21 of the Complaint.

22. Defendants deny the allegations contained in Paragraph 22 of the Complaint.

23. Defendants admit that they have the authority to hire and fire employees, make decisions regarding policies and procedures, and make decisions regarding employee compensation and capital expenditures. Defendants deny the remaining allegations contained in Paragraph 23 of the Complaint.

24. Defendants deny the allegations contained in Paragraph 24 of the Complaint.

25. Defendants deny the allegations contained in Paragraph 25 of the Complaint.

26. Defendants deny the allegations contained in Paragraph 26 of the Complaint.

**VIOLATION OF THE FLSA**

27. Defendants deny the allegations contained in Paragraph 27 of the Complaint.

28. Defendants deny the allegations contained in Paragraph 28 of the Complaint.

29. Defendants deny the allegations contained in Paragraph 29 of the Complaint.

**BREACH OF CONTRACT**

30. Defendants deny the allegations contained in Paragraph 30 of the Complaint.

31. Defendants deny the allegations contained in Paragraph 31 of the Complaint.

32. Defendants deny the allegations contained in Paragraph 32 of the Complaint.

33. Defendants deny the allegations contained in Paragraph 33 of the Complaint.

**QUANTUM MERUIT**

34. Defendants deny the allegations contained in Paragraph 34 of the Complaint.

## LIQUIDATED DAMAGES

35. Defendants deny the allegations contained in Paragraph 35 of the Complaint.

## ATTORNEYS' FEES

36. Defendants deny the allegations contained in Paragraph 36 of the Complaint.

## DEMAND FOR JURY

37. Defendants admit that Plaintiffs have demanded a jury trial, as contained in Paragraph 37 of the Complaint.

## PRAYER

Defendants deny the allegations contained in the Prayer of the Complaint and deny that they, individually or collectively, are liable to the Plaintiffs.

## AFFIRMATIVE DEFENSES

1. The Complaint, and each and every cause of action set forth therein, fails to state a cause of action against each Defendant, and is barred for the period of time that the Plaintiffs provided services pursuant to an independent contractor relationship with Tavaero (either through Sterling or Lion) or the Dry Lease agreement between Volpe and Tavaero.

2. The Complaint, and each and every cause of action set forth therein, fails to state a cause of action against each Defendant, and is barred for the period of time that Rodriguez was employed directly by Tavaero as he did not work hours in excess of 40 hours in any given workweek.

3. The Complaint, and each and every cause of action set forth therein, fails to state a cause of action against each Defendant, and is barred for the period of time that Ortiz was employed directly by Tavaero as he was an exempt employee as defined by the FLSA or, alternatively, did not work hours in excess of 40 hours in any given workweek.

4. Since there is only one Director of Operations and one Assistant Chief Pilot at Tavaero, there are no other putative Class Members.

5. The Complaint, and each and every cause of action set forth therein, fails to state a cause of action against Venturini, and is barred because Plaintiffs, as well as any putative Class Member asserting the same facts as Plaintiffs, would be barred from asserting a meritorious claim because Venturini was not an "employer" or part of any "enterprise" upon which to base relief.

6. The Complaint, and each and every cause of action set forth therein, fails to state a cause of action against White, and is barred because Plaintiffs, as well as any putative Class Member asserting the same facts as Plaintiffs, would be barred from asserting a meritorious claim because White was not an "employer" or part of any "enterprise" upon which to base relief.

7. The Complaint, and each and every cause of action set forth therein, fails to state a cause of action against Venturini, and is barred because Plaintiffs, as well as any putative Class Member asserting the same facts as Plaintiffs, would be barred from asserting a meritorious claim due to the lack of any employment relationship between any Plaintiff and Venturini pursuant to the FLSA.

8. The Complaint, and each and every cause of action set forth therein, fails to state a cause of action against White, and is barred because Plaintiffs, as well as any putative Class Member asserting the same facts as Plaintiffs, would be barred from asserting a meritorious claim due to the lack of any employment relationship between any Plaintiff and White pursuant to the FLSA.

9. Sterling was not an "employee" as that term is defined by the FLSA.

10. Lion was not an "employee" as that term is defined by the FLSA.

11. The Complaint, and each and every cause of action set forth therein, fails to state a cause of action against any Defendant, and is barred because Plaintiffs, as well as any putative Class Member asserting the same facts as Plaintiffs, would be unjustly enriched by the granting or award of any of the requested relief.

12. The Complaint, and each and every cause of action set forth therein, fails to state a cause of action against any Defendant, and is barred because Plaintiffs, as well as any putative Class Member asserting the same facts as Plaintiffs, would be asserting claims subject to the defense of intentional misrepresentations.

13. The Complaint and each and every cause of action set forth therein, fails to state a cause of action against any Defendant, and is barred because Plaintiffs, as well as any putative Class Member asserting the same facts as Plaintiffs, are breaching one or more applicable contracts with the Defendants.

14. The Complaint, and each and every cause of action set forth therein, fails to state a cause of action against any Defendant, and is barred because Plaintiffs, as well as any putative Class Member asserting the same facts as Plaintiffs, would be precluded from relief on the basis of Defendants' detrimental reliance on the Plaintiffs' choice and demand, in word and in deed, not to be treated or characterized as an "employee" during the relevant period of time.

15. The Complaint, and each and every cause of action set forth therein, fails to state a cause of action against any Defendant, and is barred because Plaintiffs, as well as any putative Class Member asserting the same facts as Plaintiffs, delayed making any complaint or asked to be classified and actually treated as an "employee," thus the action is barred by the doctrines of estoppel and/or laches.

16. The Complaint, and each and every cause of action set forth therein, fails to state a cause of action against any Defendant, and is barred because Plaintiffs, as well as any putative Class Member asserting the same facts as Plaintiffs, requested to be paid through their business entities and treated as independent contractors, thus the action is barred by the doctrines of estoppel and/or laches.

17. The Complaint, and each and every cause of action set forth therein, fails to state a cause of action against any Defendant, and is barred because Plaintiffs, as well as any putative Class Member asserting the same facts as Plaintiffs, would be precluded from relief on the basis of the "unclean hands" doctrine.

18. The Complaint, and each and every cause of action set forth therein, fails to state a cause of action against any Defendant, and is barred because Plaintiffs, as well as any putative Class Member asserting the same facts as Plaintiffs, would be precluded from relief on the basis that no Plaintiff used reasonable care to avoid or mitigate any damages alleged in the Complaint.

19. The Complaint, and each and every cause of action set forth therein, fails to state a cause of action against any Defendant, and is barred because Plaintiffs, as well as any putative Class Member asserting the same facts as Plaintiffs, would be barred because the FLSA does not apply to independent contractors who work for their own advantage on the premises of another, and who were not denied the minimum standard of living, and did not perform under an arrangement which threatened fair competition.

20. The Complaint, and each and every cause of action set forth therein, falls to state a cause of action against any Defendant, and is barred because Plaintiffs, as well as any putative Class Member asserting the same facts as Plaintiffs, would be barred from asserting a meritorious claim because there is a complete absence of any negligence or willful misconduct on the part of

any Defendant.

21. Plaintiffs' request that this action be treated as an FLSA collective action should be barred due to confusion, irreconcilable conflict, lack of manageability and prejudice to putative class members and any Defendant.

22. Plaintiffs are barred from obtaining legitimate certification of any class or collective action under the Complaint due to the lack of any ascertainable, identifiable class.

23. Plaintiffs are barred from obtaining legitimate certification of any class or collective action under the Complaint due to the absence of any commonality of interest.

24. Plaintiff are barred from obtaining legitimate certification of any class or collective action under the Complaint due to the fact that such administration would absolutely not be the superior method of adjudicating any applicable dispute.

25. Plaintiffs are barred from obtaining legitimate certification of any class or collective action under the Complaint due to the inadequacy of Plaintiffs as representatives of any putative class.

26. Plaintiffs are barred from obtaining legitimate certification of any class or collective action under the Complaint due to the fact that any certification would result in insurmountable management problems.

27. Plaintiffs are barred from obtaining legitimate certification of any collective action under the Complaint due to the fact that there is an absence of common questions of law or fact and/or the absence of similarly situated putative class members.

28. Plaintiffs are barred from obtaining legitimate certification of any collective action under the Complaint due to the fact that class treatment would not benefit the Court or the parties.

29. Plaintiffs are barred from obtaining legitimate certification of any collective action

under the Complaint due to the fact that common questions of fact do not predominate.

30. Plaintiffs are barred from obtaining legitimate certification of any collective action under the Complaint due to the fact that any actual damages would be unique, individualized, and/or nominal.

31. Plaintiffs are barred from obtaining legitimate certification of any collective action under the Complaint due to the fact that the individual Plaintiff's proofs would be individualized.

32. Plaintiffs are barred from obtaining legitimate certification of any collective action under the Complaint due to the fact that it would cause confusion, irreconcilable conflict, lack of manageability and prejudice to putative Class Members and Defendants.

33. Any damages purportedly suffered by Plaintiffs are the result of their own action or inaction and/or negligence, or the negligence of third parties beyond Defendants' control.

34. During part of the time covered by the FLSA, Plaintiffs were not "employees" as that term is defined by the FLSA, 29 U.S.C §203 *et seq*.

35. Defendants at all times, and in all manners, acted in accordance with any and all duties and obligations they may have had under the FLSA.

36. Plaintiffs cannot establish that any acts or omissions were willful under the FLSA.

37. Plaintiffs' claims under the FLSA are barred to the extent that Plaintiffs, or any other person on whose behalf Plaintiffs seeks to assert a claim, have submitted false and inaccurate time reports or records.

38. Defendants state, in the alternative, if necessary, that any actions taken with respect to Plaintiffs and any similarly situated individuals were taken in good faith in conformity with and in reliance on a written administrative regulation, order, ruling, approval, interpretation, and/or administrative practice or policy, and/or with reasonable grounds to believe such conduct complied

with the FLSA and or interpretations of that statute.

39. Plaintiffs' claims are barred to the extent that the consent form does not comply with the requirements of the FLSA.

40. Plaintiffs' claims are barred as to all hours allegedly worked of which Plaintiffs' employer lacked actual or constructive knowledge.

41. Plaintiffs cannot recover overtime for time periods, which fall within the "*de minimus*" exception. Any such times periods are insubstantial, insignificant or, as a practice or administrative matter, could not have been precisely recorded so that Plaintiffs are precluded from recovery for those time periods.

42. Plaintiffs are not entitled to any liquidated damages as Defendants acted in good faith, with reasonable grounds for believing that their actions or inactions or omissions were not in violation of the FLSA. *See* 29 U.S.C. § 260.

43. To the extent Plaintiffs seek remedies against Defendants beyond those available under the statute upon which Plaintiffs' claims are based, such remedies are improper.

44. If any liability is associated with this action, which Defendants expressly deny, a two-year statute of limitations applies. *See* 29 U.S.C. § 255. Defendants did not knowingly, willfully or with reckless disregard violate the FLSA with respect to Plaintiffs. Plaintiffs cannot establish that any acts or omissions were willful under the FLSA. Plaintiffs would be unjustly enriched by the granting or award of any of the requested relief.

45. Plaintiff's damages, to the extent they exist at all, as well as any putative Class Member asserting the same damages as Plaintiff, would be subject to the defense of set-offs, credits and deductions.

46. The Complaint, and each and every cause of action set forth therein, fails to state a

cause of action against Venturini or White, and is barred because Plaintiffs, as well as any putative Class Member asserting the same facts as Plaintiffs, would be barred from asserting a meritorious claim because neither Venturini or White were an "employer," "joint employer," or part of any "enterprise" upon which to base relief.

47. The Complaint, and each and every cause of action set forth therein, fails to state a cause of action against any Defendant, and is barred because Plaintiffs, as well as any putative Class Member asserting the same facts as Plaintiffs, would be barred from asserting a meritorious claim because no Plaintiff ever conformed to the obligations or limitations of employees.

48. Defendants at all times, and in all manners, acted in accordance with any and all duties and obligations they may have had under the FLSA.

49. Plaintiff cannot establish that any acts or omissions were willful under the FLSA.

50. Plaintiffs' claims are barred, in whole or in part, by equitable estoppel.

51. Any agreement between any Defendant and any Plaintiff was terminated for cause and, therefore, Defendants are not liable for breach of any contract or damages arising from an alleged breach. Likewise, Plaintiffs cannot recover under a quantum meruit theory.

52. Plaintiffs anticipatorily and materially breached any agreement with any Defendant and, therefore, Defendants are not liable for breach of any contract or damages arising from an alleged breach. Likewise, Plaintiffs cannot recover under a quantum meruit theory.

53. Because Plaintiffs' Original Complaint is phrased in conclusory terms, Defendants cannot fully anticipate all defenses that may be applicable to this action. Accordingly, the right to assert additional defenses, to the extent such defenses are applicable, is hereby reserved.

## CONCLUSION

For the above reasons, Defendants Renato Venturini, Marcela White, and Tavaero Jet Charter Corporation pray that Plaintiffs take nothing by way of this lawsuit, that Defendants be discharged without liability, that they recover their costs and attorneys' fees, and for all other relief to which they may be entitled.

## COUNTERCLAIMS

Counter-Plaintiffs Renato Venturini ("Venturini"), Marcela White ("White"), and Tavaero Jet Charter Corporation ("Tavaero") (collectively "Counter-Plaintiffs") files their counterclaims against Counter-Defendants Javier Rodriguez ("Rodriguez"), Chris Ortiz ("Ortiz"), and Troy-Walker Enterprises, LLC d/b/a Sterling Jet Aviation ("Sterling") (collectively "Counter-Defendants") as follows:

## NATURE OF THE ACTION

1. This is an action against Counter-Defendants for (a) trade secret misappropriation under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.* (Count I); (b) trade secret misappropriation under the Texas Uniform Trade Secrets Act ("TUTSA"), Texas Business and Commerce Code Section 134A.001 *et seq.* (Count II); (c) breach of fiduciary duty and duty of loyalty based upon Counter-Defendant Ortiz's creation of a competitive business venture while employed or under contract with Tavaero and Counter-Defendants' refusal to act in the best interests of Tavaero (Count III); (d) tortious interference with existing business relationships based upon Counter-Defendants' contact with Tavaero's customers and prospective customers after the termination of the agreements (Count IV); (e) tortious interference with existing business relationships based upon Counter-Defendants' contact with Tavaero's agreements with its employees (Count V); (f) business disparagement based upon Counter-Defendants' dissemination

of false and/or disparaging information about Counter-Plaintiffs (Count VI); (g) conversion (Count VII); and (h) violation of the Texas Theft Liability Act (Count VIII).

2. By this action, Counter-Plaintiffs seek actual, compensatory, and punitive damages, attorneys' fees, and costs, as well as to enjoin Counter-Defendants from (i) unlawfully using Tavaero's confidential, proprietary, and trade secret information for their or any other party's monetary gain or any other wrongful purpose, (ii) inducing Tavaero's customers or prospective customers from terminating their business relationships with Tavaero and/or diverting such customers to businesses formed by the Counter-Defendants, and (iii) disparaging Counter-Plaintiffs.

## PARTIES

3. All of the parties have appeared in this action, either as Plaintiff or as Defendants.

## JURISDICTION AND VENUE

4. As Counter-Defendants have filed his action in this Court, jurisdiction and venue in this Court are also appropriate for the Counterclaims.

## FACTS COMMON TO ALL COUNTS

5. Tavaero has been in the aircraft charter business for over 20 years, and currently has 7 aircraft in its fleet, with the aircraft size ranging from a capacity of 5 to 12 passengers, including Challengers, Hawkers, and Citation multi engine corporate-type jets. Based at Houston's Hobby Airport, Tavaero is today considered one of the biggest and more respected charter companies in Houston, with clientele ranging from prominent business leaders to politicians, and famous Hollywood personalities.

6. In 1999, Renato Venturini and his wife, Marcela White, purchased Tavaero. Venturini has been involved in commercial and private aviation for more than 35 years. From his

start at Transtar Airlines to his position of President at Tavaero, he has been involved in every facet of operations including, but not limited to, aircraft inspection, acquisition, maintenance, operations, marketing and sales.

7. White is the General Manager of Tavaero, and has been in the aircraft charter business for over 30 years. As General Manager, White is involved in the day to day operation of Tavaero, including administrative responsibilities related to safety, customer service, and the management of 30 pilots and staff.

8. In 2010, Tavaero entered into an "Exclusive Aircraft Dry Lease for Commercial Flight Operations" ("Dry Lease") with Volpe Aviation. Under the terms of the Dry Lease, Volpe would supply an aircraft – a Hawker – owned by Volpe to Tavaero to use as a charter jet. Volpe agreed to provide a pilot and a co-pilot for any charter flight. In return for the use of the Hawker and the crew, Tavaero agreed to compensate Volpe on a "per flight hour" basis, pay a flat rate for crew expenses and contract pilot day rate, and other expenses set forth in the Dry Lease.

9. Volpe subsequently agreed to provide Tavaero with the use of the Challenger under a similar Dry Lease.

10. Under the terms of the Dry Lease, Volpe identified Rodriguez, Ortiz, and one other pilot as the flight crew.

11. According to Plaintiffs, they provided these services to Volpe pursuant to an agreement between Volpe and Sterling.

12. Beginning in early 2014, Tavaero engaged Ortiz as its Director of Operations. Since February 2016, Tavaero has paid Ortiz's company, Sterling, $2,300 a month for his services as the Director of Operations.

13. From September 2013 to December 2015, Rodriguez contracted with Tavaero through his company, Lion Aviation, LLC ("Lion") to provide pilot services. In January 2016, Rodriguez became a full-time employee of Tavaero, but resigned a month later to go to work for Ortiz at Sterling.

14. In March 2016, Tavaero engaged Rodriguez as its Assistant Chief Pilot. Under this arrangement, Rodriguez was paid as a Tavaero employee or a contractor through Lion.

15. In either their capacity as direct employees of Tavaero or as contractors through Lion or Sterling, both Rodriguez and Ortiz had access to, and received, confidential information and trade secrets belonging to Tavaero. This information included, but was not limited to, manuals prepared by or for Tavaero, financial information, compensation data, computer programs and codes, customer lists, customer preferences, aircraft acquisitions, marketing strategies, and pending projects and proposals. This information was of enormous value to Tavaero and was used for Tavaero's competitive advantage in a highly competitive marketplace.

16. As employees of Tavaero, both Rodriguez and Ortiz agreed to protect Tavaero's confidential information and trade secrets. They either received an Employee Handbook or executed a Confidentiality Agreement which required them to keep the information confidential. Counter-Defendants clearly knew that Tavaero did not want them to use the confidential information and trade secrets in any way that would harm Tavaero.

17. In May 2017, Ortiz and his wife, Candace Troy, formed Superior Jet Charter, Inc. ("Superior"). In the Certificate of Formation filed with the Texas Secretary of State, Ortiz was identified as the sole director of Superior. Based upon its name and other factors, Ortiz created Superior with the specific intent of competing against Tavaero, and thereafter sought to transfer existing Tavaero customers to Superior.

18. Superior was incorporated by Ortiz and his wife while he was providing services to Tavaero as Director of Operations.

19. Ortiz did not disclose to Counter-Plaintiffs that he was incorporating a business that would perform any of the aircraft services currently provided by Tavaero.

20. Superior would perform nearly the identical services as Tavaero.

21. Superior will compete for the same types of customers as Tavaero.

22. Tavaero was not aware of the creation of Superior until after Counter-Defendants filed their lawsuit.

23. Tavaero has also discovered that, even before the creation of Superior, Ortiz was disparaging Tavaero and attempting to induce Tavaero's customers and prospective customers from utilizing Tavaero's jet charter services.

24. In late May 2017, Rodriguez and Ortiz flew a flight to Aruba. Prior to leaving for Aruba, Ortiz was asked by White for the identity of the passengers on the flight. This information was needed for Tavaero recordkeeping, FAA regulatory compliance, and safety purposes. Ortiz initially refused to provide the information to White. When pressed, Ortiz identified individuals who, in fact, were not passengers on the flight. White subsequently discovered that the true passengers were individuals who previously had flown with Tavaero pursuant to a contract with Skyjet. Skyjet would contract with Tavaero for supplemental lift for its customers.

25. Given Tavaero's agreement with Skyjet, Tavaero was concerned that the Aruba flight could be viewed as a breach of its agreement with Skyjet or an attempt to interfere with Skyjet's business relationship with the passengers. More importantly, the failure of Ortiz and Rodriguez (who was also questioned about the identity of the passengers) to properly identify the passengers was viewed as a safety risk, a breach of trust, and could have easily exposed anyone

involved with the aircraft and/or that flight to both civil penalties and certificate actions for the airmen. White subsequently informed both Rodriguez and Ortiz that their services as an Assistant Chief Pilot, Director of Operations, or member of a flight crew were no longer needed. Tavaero, as a precautionary measure, also terminated its Dry Lease with Volpe.

26. Since the termination, Counter-Defendants have contacted both Tavaero customers and employees and made disparaging comments designed to induce the customers to cease doing business with Tavaero and the employees to leave Tavaero, in an effort to shift business and employees from Tavaero to Superior. To date, one pilot and Tavaero's Marketing Director have terminated their employment with Tavaero to go to work for Ortiz, Sterling, and/or Superior.

27. Additionally, Rodriguez entered Tavaero's premises without authorization or approval and removed pilot notebooks containing information about Ortiz, Rodriguez, and Bryan Cearley (who is now employed by Ortiz and/or Sterling). While the notebooks contained information about the Counter-Defendants and Cearley, Tavaero has an obligation under FAA regulations to maintain these records, including the duty time sheets. The unauthorized removal of these notebooks by Ortiz potentially exposes Counter-Plaintiffs to administrative penalties and/or certificate actions.

28. Counter-Defendants' actions constitute not only a breach of their fiduciary duties and the duty of loyalty, but give rise to other potential claims under Texas law, for the damage that they have caused and continue to cause Counter-Plaintiffs.

**COUNT I**
**TRADE SECRET MISAPPROPRIATION UNDER DTSA**

29. Counter-Plaintiffs incorporate by reference herein their allegations contained in paragraphs 1 through 28 of the Counterclaims.

30. Counter-Plaintiffs enjoy a competitive advantage over its existing and would-be competitors in the jet charter industry by reason of their investment in, and development of, confidential and proprietary information and trade secrets, including, but not limited to, their customer list.

31. The DTSA, Pub. L. No. 114-153, which was enacted on May 11, 2016, specifically allows a private right of action for misappropriation of trade secrets.

32. The trade secrets were neither individually nor collectively known outside Counter-Plaintiffs by either the general public or those who specifically might have profited from the trade secrets. Counter-Plaintiffs are the owner of trade secrets, as defined by the DTSA, which have been willfully misappropriated by Counter-Defendants.

33. The trade secrets gave Counter-Plaintiffs an economic advantage over its potential competitors.

34. Counter-Plaintiffs, through the Employee Handbook and/or Confidentiality Agreements, used reasonable measures to maintain the confidentiality of the trade secrets and proprietary information related to its business and clients. Depending upon the type of information, such trade secret information was disclosed only to Counter-Plaintiffs' employees who were actively involved in the use of such information, or had reason to know or use such information in order to perform their duties at Tavaero.

35. The trade secret information was disclosed to Counter-Defendants under an express understanding of confidentiality.

36. Counter-Defendants, as a result of and during the course of their employment and/or contractor relationship with Tavaero, had substantial and ongoing access to Counter-Plaintiffs' trade secrets.

37. Upon information and belief, in violation of the DTSA, Counter-Defendants knowingly and intentionally misappropriated Counter-Plaintiffs' trade secrets, by soliciting business from existing Tavaero customers in direct competition with Tavaero. Alternatively, in violation of the DTSA, Counter-Defendants knowingly and intentionally misappropriated Counter-Plaintiffs' trade secrets, to induce existing and prospective Tavaero customers to not do business with Tavaero.

38. Upon information and belief, Counter-Defendants intentionally and with conscious disregard for the rights of Counter-Plaintiffs, misappropriated Counter-Plaintiffs' trade secrets to their significant economic advantage and to the economic detriment of Tavaero.

39. As a direct and proximate result of the foregoing misappropriation by Counter-Defendants, Counter-Plaintiffs have been harmed in an amount to be determined at trial.

40. Additionally, as a direct and proximate result of the foregoing misappropriation by Counter-Defendants, Counter-Plaintiffs have sustained, and will continue to sustain, immediate and irreparable injury, for which there is no adequate remedy at law and which will continue unless enjoined by this Court. Accordingly, Counter-Plaintiffs are entitled to injunctive relief.

WHEREFORE, Counter-Plaintiffs request that this Court enter an order and judgment temporarily and permanently restraining and enjoining Counter-Defendants from using their existing customer list and soliciting Tavaero's customers. Counter-Plaintiffs further request that this Court enter an order and judgment temporarily and permanently restraining and enjoining Counter-Defendants, and persons or entities in active concert or participation with them, from:

(i) Continuing to retain and from divulging or utilizing Counter-Plaintiffs' trade secrets;

(ii) Using Counter-Plaintiffs' trade secrets for Counter-Defendants' benefit or for the benefit of any others;

Counter-Plaintiffs also request an order and judgment:

(iii) Requiring Counter-Defendants to return to Counter-Plaintiffs all of Counter-Plaintiffs' trade secrets and proprietary information, including its electronic devices, electronic files, data and software, or copies thereof, currently in their possession or subject to their control;

(iv) Requiring Counter-Defendants to surrender to Counter-Plaintiffs for inspection and copying any device Counter-Defendants used to access any trade secrets of Counter-Plaintiff;

(v) Retaining jurisdiction of this action to impose suitable sanctions on Counter-Defendants in the event of any future violation of any order that may be issued by this Court;

(vi) Awarding compensatory damages for Counter-Defendants' violation;

(vii) Awarding punitive damages;

(viii) Awarding attorney's fees and exemplary damages pursuant to 18 U.S.C. § 1836(b)(3)(D); and

(ix) Granting Counter-Plaintiffs such other and further relief as this Court may deem just.

**COUNT II**
**MISAPPROPRIATION OF TRADE SECRETS UNDER TUTSA**

41. Counter-Plaintiffs incorporate by reference herein their allegations contained in paragraphs 1 through 40 of the Counterclaims.

42. Counter-Plaintiffs' proprietary and confidential information as described above, can be generally categorized as (a) manuals prepared by or for Tavaero's benefit; (b) financial information; (c) compensation data; (d) computer programs and codes; (e) customer lists; (f) customer preferences; (g) aircraft acquisitions; (h) marketing strategies; and (i) pending projects and proposals.

43. This specific proprietary and confidential information: (a) is not generally known

outside of Counter-Plaintiffs; (b) is protected by significant measures to safeguard its secrecy, including requiring Counter-Defendants to enter into an agreement which requires the information to be kept confidential; (c) provides Counter-Plaintiffs with significant value, as long as the information remains secret, and would provide a competitor with significant value; (d) was acquired by Counter-Plaintiffs through significant effort and expense; and (e) cannot be easily or inexpensively duplicated.

44. Counter-Plaintiffs' proprietary and confidential information described above constitutes trade secrets pursuant to the Texas Uniform Trade Secrets Act.

45. Upon information and belief, Counter-Defendants have used and/or disclosed Counter-Plaintiffs' trade secrets.

46. In addition, Counter-Defendants will inevitably use or disclose Counter-Plaintiffs' trade secrets in competition with Tavaero.

47. Ortiz had access to and utilized Counter-Plaintiffs' trade secrets in his role as Director of Operations.

48. Rodriguez had access to and utilized Counter-Plaintiffs' trade secrets in his role as Assistant Chief Pilot.

49. In these former positions, Counter-Defendants had intimate knowledge of Counter-Plaintiffs' trade secrets.

50. On information and belief, Counter-Defendants are actively soliciting Tavaero's customers in competition with Tavaero.

51. Counter-Defendants have misappropriated and are using the trade secrets through improper means as defined by the TUTSA.

52. Absent injunctive relief, Counter-Plaintiffs will suffer irreparable harm as a result of Counter-Defendants' use and disclosure of Counter-Plaintiffs' trade secrets.

WHEREFORE, Counter-Plaintiffs request that this Court enter an order and judgment temporarily and permanently restraining and enjoining Counter-Defendants from using their existing customer list and soliciting Tavaero's customers. Counter-Plaintiffs further request that this Court enter an order and judgment temporarily and permanently restraining and enjoining Counter-Defendants, and persons or entities in active concert or participation with them, from:

(i) Continuing to retain and from divulging or utilizing Counter-Plaintiffs' trade secrets;

(ii) Using Counter-Plaintiffs' trade secrets for Counter-Defendants' benefit or for the benefit of any others;

Counter-Plaintiffs also request an order and judgment:

(iii) Requiring Counter-Defendants to return to Counter-Plaintiffs all of Counter-Plaintiffs' trade secrets and proprietary information, including its electronic devices, electronic files, data and software, or copies thereof, currently in his possession or subject to his control;

(iv) Requiring Counter-Defendants to surrender to Counter-Plaintiffs for inspection and copying any device Counter-Defendants used to access any trade secrets of Counter-Plaintiff;

(v) Retaining jurisdiction of this action to impose suitable sanctions on Counter-Defendants in the event of any future violation of any order that may be issued by this Court;

(vi) Awarding compensatory damages for Counter-Defendants' violation;

(vii) Awarding punitive damages;

(viii) Awarding attorney's fees and exemplary damages pursuant to TUTSA; and

(ix) Granting Counter-Plaintiffs such other and further relief as this Court may deem just.

## COUNT III
## BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY

53. Counter-Plaintiffs incorporate by reference herein their allegations contained in paragraphs 1 through 52 of the Counterclaims.

54. Counter-Defendants, by virtue of their employment and contractual positions, and the Employee Handbook and/or Confidentiality Agreement, were under a fiduciary duty to Counter-Plaintiffs to maintain the confidentiality of Counter-Plaintiffs' trade secrets and other proprietary business information, and not to use or disclose, without Counter-Plaintiffs' express authorization, these trade secrets or other proprietary business information for the benefit of an entity other than Counter-Plaintiffs or otherwise to Counter-Plaintiff's disadvantage.

55. Upon information and belief, Counter-Defendants, by virtue of their employment and contractual positions, and the Employee Handbook and/or Confidentiality Agreement, knew or should have known that they owed a duty of loyalty to Counter-Plaintiffs and a fiduciary duty to Counter-Plaintiff to maintain the confidentiality of Counter-Plaintiffs' trade secrets and other proprietary business information, and not to use or disclose, without Counter-Plaintiffs' express authorization, these trade secrets and other proprietary business information for the benefit of an entity other than Counter-Plaintiffs or otherwise to Counter-Plaintiffs' disadvantage.

56. Counter-Plaintiffs have been, and continue to be, damaged by the breaches of fiduciary duties and duties of loyalty by Counter-Defendants.

WHEREFORE, Counter-Plaintiffs request that this Court enter an order and judgment temporarily and permanently restraining and enjoining Counter-Defendants and those persons or entities in active concert or participation with him who receive actual notice of judgment from:

(i) Using Counter-Plaintiff's proprietary information for their own benefit or for the benefit of others;

(ii) Soliciting Tavaero's customers through the use of Counter-Plaintiffs' confidential information and trade secrets;

(iii) Inducing Tavaero's customers through the use of Counter-Plaintiffs' confidential information and trade secrets to cease using Tavaero;

(iv) Soliciting Tavaero's employees or inducing them to terminate their employment agreements with Tavaero;

Counter-Plaintiffs also request an order and judgment:

(v) Retaining jurisdiction of this action to impose suitable sanctions on Counter-Defendants in the event of any future violation of any order that may be issued by this Court;

(vi) Awarding Counter-Plaintiffs damages incurred as a result of Counter-Defendants' breach of fiduciary duty and duty of loyalty; and

(vii) Granting Counter-Plaintiffs such other and further relief as this Court may deem just together with the costs of this action.

**COUNT IV**
**TORTIOUS INTERFERENCE WITH EXISTING**
**AND PROSPECTIVE BUSINESS RELATIONS**

57. Counter-Plaintiffs incorporate by reference herein their allegations contained in paragraphs 1 through 56 of the Counterclaims.

58. Following the termination of Counter-Defendants' services, they have been soliciting business from Tavaero's existing and prospective customers, have encouraged the existing customers to cease doing business with Tavaero, and have encouraged prospective customers to use another aircraft charter company.

59. After Counter-Defendants' unlawful solicitations and actions, some of Tavaero's customers have ceased doing business with Tavaero.

60. After Counter-Defendants' unlawful solicitations and actions, some of Tavaero's prospective customers have decided against doing business with Tavaero.

61. As a direct result of Counter-Defendants' interference, Counter-Defendants have incurred damage, including (but not limited to) lost profits, punitive damages, attorneys' fees, and other costs and expenses.

WHEREFORE**,** Counter-Plaintiffs respectfully request that this Court enter final judgment against Counter-Defendants for (a) damages in the amount recoverable as a result of lost profits and business relationships; (b) punitive damages; (c) prejudgment and post-judgment interest; (d) costs; (e) attorneys' fees; and (f) such other relief the Court deems just and proper.

**COUNT V**
**TORTIOUS INTERFERENCE WITH EMPLOYMENT RELATIONS**

62. Counter-Plaintiffs incorporate by reference herein their allegations contained in paragraphs 1 through 61 of the Counterclaims.

63. Following the termination of Counter-Defendants' services, they have actively solicited Tavaero's employees to terminate their employment relationships with Tavaero and go to work for Counter-Defendants. At least one employee to date has done so.

64. As a direct result of Counter-Defendants' interference, Counter-Defendants have incurred damage, including (but not limited to) lost profits, punitive damages, attorneys' fees, and other costs and expenses.

WHEREFORE**,** Counter-Plaintiffs respectfully request that this Court enter final judgment against Counter-Defendants for (a) damages in the amount recoverable as a result of lost profits and business relationships; (b) punitive damages; (c) prejudgment and post-judgment interest; (d) costs; (e) attorneys' fees; and (f) such other relief the Court deems just and proper.

## COUNT VI
## BUSINESS DISPARAGEMENT

65. Counter-Plaintiffs incorporate by reference herein their allegations contained in paragraphs 1 through 64 of the Counterclaims.

66. Counter-Defendants intentionally made false statements about Counter-Plaintiffs' businesses and business practices which are untrue and disparaging as to the nature and manner in which Counter-Plaintiffs conduct business.

67. Upon information and belief, Counter-Defendants published the untrue and disparaging statements to third-parties orally and by email.

68. Counter-Defendants knew that the false statements were likely to influence prospective users of Counter-Plaintiffs' businesses to avoid Counter-Plaintiffs and Counter-Plaintiffs' businesses.

69. The false statements materially and substantially induced Tavaero's customers not to utilize its businesses and to not contract with Counter-Plaintiffs.

70. As a result of Counter-Defendants publishing the false and defamatory statements to third parties, Counter-Plaintiffs have suffered pecuniary loss in Texas in the form of lost business revenues and business contracts and lost business opportunities.

WHEREFORE, Counter-Plaintiffs respectfully request that this Court enter final judgment against Counter-Defendants for (a) damages in the amount recoverable as a result of lost business revenues and business contracts and lost business opportunities; (b) punitive damages; (c) prejudgment and post-judgment interest; (d) costs; and (e) such other relief the Court deems just and proper.

**COUNT VII**
**<u>CONVERSION</u>**

71. Counter-Plaintiffs incorporate by reference herein its allegations contained in paragraphs 1 through 70 of the Counterclaims.

72. While the notebooks contained information about Ortiz, Rodriguez and Bryan Cearley, Counter-Plaintiffs owned and legally possessed the pilot notebooks.

73. By entering Tavaero's premises without authorization or approval, Rodriguez wrongfully acquired and exercised dominion and control over Counter-Plaintiffs' personal property.

74. Counter-Defendants have refused to return the property on Counter-Plaintiffs' demand.

75. Counter-Defendants' wrongful acts proximately caused injury to Counter-Plaintiffs, which resulted in the loss of use of the converted property and potential exposure to FAA administrative penalties for no longer possessing the pilot notebooks.

76. Counter-Plaintiffs seeks the return of the converted property.

77. As Counter-Plaintiffs' injury resulted from Counter-Defendants' malice, Counter-Plaintiffs seek exemplary damages under Texas Civil Practice & Remedies Code Section 41.003(a).

WHEREFORE, Counter-Plaintiffs respectfully request that this Court enter final judgment against Counter-Defendants; require Counter-Defendants to return the pilot notebooks; and award such other relief the Court deems just and proper.

## COUNT VIII
## VIOLATION OF THE TEXAS THEFT LIABILITY ACT

78. Counter-Plaintiffs incorporate by reference herein its allegations contained in paragraphs 1 through 77 of the Counterclaims.

79. Counter-Defendants are liable to Counter-Plaintiffs for violation of the Texas Theft Liability Act. *See* Tex. Civ. Prac. & Rem. Code §§134.001 *et seq.* Specifically, Counter-Defendants unlawfully appropriated the notebooks containing information about Ortiz, Rodriguez and Bryan Cearley, with the intent to deprive Counter-Plaintiffs of the property. *See* Tex. Penal Code §31.03.

80. Because Counter-Defendants' conduct was fraudulent, malicious, and/or grossly negligent, Counter-Plaintiffs seek and are entitled to recover exemplary damages from the Counter-Defendants. Further, Counter-Plaintiffs are entitled to the return of the property wrongfully taken by Counter-Defendants.

81. Counter-Defendants also seek the statutory sum of $1,000 as authorized by Tex. Civ. Prac. & Rem. Code §134.005(a)(1) and reasonable and necessary attorneys' fees as authorized by Tex. Civ. Prac. & Rem. Code §134.005(b).

WHEREFORE**,** Counter-Plaintiffs respectfully request that this Court enter final judgment against Counter-Defendants; require Counter-Defendants to return the pilot notebooks; award Counter-Plaintiffs the statutory sum of $1,000 and exemplary damages; and award such other relief the Court deems just and proper.

Dated: September 13, 2017.

Respectfully submitted,

**SOUTHERLAND LAW FIRM**

/s/ J. Alfred Southerland
J. Alfred Southerland
State Bar No. 18860050
4141 Southwest Freeway
Suite 300
Houston, Texas 77027
Telephone: (713) 228-8508
Facsimile: (713) 228-8507
alf@southerlandlawfirm.com

Gary Linn Evans
State Bar No. 00795338
P.O. Box 130246
The Woodlands, Texas 77393-0246
Telephone: (281) 367-7732
Facsimile: (281) 367-8003
evans@texasaviationlaw.com

**ATTORNEYS FOR DEFENDANTS RENATO VENTURINI, MARCELA WHITE, AND TAVAERO JET CHARTER CORPORATION**

## CERTIFICATE OF SERVICE

This is to certify that I electronically filed this pleading via the electronic case filing system of the Court, causing the electronic case filing system to send a "Notice of Electronic Filing" to all counsel of record in accordance with the Federal Rules of Civil Procedure on September 13, 2017.

*/s/ J. Alfred Southerland*
Counsel for Defendants